UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN STARACE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON LAW FIRM and DOES 1–10,<br><br>Defendants. | No. 1:18-cv-01596-DAD-SKO<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 13) |

This matter is before the court on defendant's motion to compel arbitration and to dismiss this putative class action lawsuit. (Doc. No. 13.) A hearing on the motion was held on June 4, 2019. Attorney Kelsey Kuberka appeared telephonically on behalf of plaintiff, and attorneys Chad Fuller and Patrick Dillard appeared telephonically on behalf of defendant. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendant's motion to compel arbitration and dismiss this action.

**BACKGROUND**

In his complaint plaintiff alleges the following. Defendant Lexington Law Firm ("Lexington") is a debt collection company. (Doc. No. 1 ("Compl.") at ¶ 7.) At some point in 2018, plaintiff contacted Lexington in an attempt to repair his credit. (*Id.* at ¶ 10.) Lexington required his debit card information in order to provide its services. (*Id.* at ¶ 11.) After plaintiff

1

provided Lexington with the information, Lexington—"without Plaintiff's knowledge or consent"—"continued to deduct funds from [his] account multiple times on a reoccurring basis, without providing [him] a written authorization to do so." (*Id.* at ¶ 13.) Plaintiff alleges that he "never provided Defendant with any authorization to deduct these sums of money on a regular basis from [his] banking account." (*Id.* at ¶ 14.) Thus, on November 19, 2018, plaintiff initiated this class action against Lexington and Doe Defendants 1–10 on behalf of two putative classes, alleging that defendants' conduct violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.* (*Id.* at ¶¶ 16, 17, 19.)

On April 10, 2019, Lexington filed the instant motion to compel arbitration and dismiss this action, contending that plaintiff executed an Engagement Agreement (the "Agreement") with Lexington in which he "unmistakably agreed to arbitrate any claims between him and Lexington Law" on an individual basis. (Doc. No. 15 at 2, 11.) In support of its motion, Lexington offers evidence that plaintiff was provided the Agreement via text message, that he acknowledged receipt of the Agreement, and that he agreed to its terms by text message. (*Id.* at 2, Ex. 1.) Lexington argues that, by assenting to the terms of the Agreement, plaintiff also agreed to the arbitration clause, which provides in relevant part:

> You agree to arbitrate all disputes and claims between you and Lexington on an individual basis only and not as part of any class. You agree that, by entering into this Contract, you are waiving the right to a trial by jury and you are waiving all rights to participate in a class action law suit or class action arbitration. . . . Lexington will reimburse you up to $300 of your arbitration filing fee. The rules of the American Arbitration Association shall govern the arbitration and can be viewed online at www.adr.org or by calling 1-800-778-7879.

(Doc. No. 15-1 at 16.) Based on this provision, Lexington argues that this court must compel arbitration of plaintiff's claims against it.

On May 21, 2019, plaintiff filed his opposition to defendant's motion. (Doc. No. 18.) On May 28, 2019, defendant filed its reply thereto. (Doc. No. 19.)

**LEGAL STANDARD**

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The

2

FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."[1] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden to prove by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). As such, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Id.* at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 at 24–25 (1983)). An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Accordingly, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

---

[1] The dispute between the parties here is limited to the first inquiry. Although plaintiff contends that the arbitration clause "is so broad as to be unconscionable and unenforceable under California law," (Doc. No. 18 at 10), he does not argue that the arbitration clause does not encompass his EFTA claim. However, whether or not the arbitration clause is unconscionable or unenforceable goes to the first inquiry outlined by the Ninth Circuit in *Chiron*, not the second. *See* 9 U.S.C. § 2.

3

**ANALYSIS**

Lexington argues that the court must compel arbitration and dismiss this putative class action because: (1) plaintiff agreed to individually arbitrate his claims against Lexington; and (2) neither the Agreement nor its arbitration clause are unconscionable. (Doc. No. 15 at 5–10.) Plaintiff counters that the court cannot compel arbitration because Lexington has not established the existence of a valid agreement between the parties. (Doc. No. 18 at 10–12.) Plaintiff further contends that, even if the parties entered into an agreement containing an arbitration clause, the court should deny Lexington's motion because the Agreement and/or the arbitration clause are unconscionable. (*Id.* at 12–14.)

**A.  Whether the Parties Entered into an Agreement**

To compel arbitration, this court must determine whether a valid agreement to arbitrate exists. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016); *Chiron*, 207 F.3d at 1130. "The party seeking to compel arbitration bears the burden of establishing that a valid agreement to arbitrate exists by a preponderance of the evidence." *Langell v. Ideal Homes LLC*, No. 16-CV-00821-HRL, 2016 WL 8711704, at *4 (N.D. Cal. Nov. 18, 2016) (citing *Knutson*, 771 F.3d at 565), *report and recommendation adopted*, 2016 WL 10859440 (N.D. Cal. Dec. 7, 2016). "Evidence may be submitted in the form of affidavits, declarations, or oral testimony." *Id.*

In deciding whether parties agreed to arbitrate, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (same). "It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565. "Mutual assent may be manifested by written or spoken words[] or by conduct . . . and acceptance of contract terms may be implied through action or inaction." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991) and *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999)) (internal quotation marks omitted). "Thus, 'an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.*

(quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.* However, "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 566 (citation and internal quotation marks omitted).

Plaintiff argues that Lexington "has failed to meet its burden and introduce evidence showing the existence of an agreement to arbitrate." (Doc. No. 18 at 10.) Plaintiff also contends that "there was no mutual assent because Plaintiff was never told about the arbitration clause or presented with the Agreement at any time." (*Id.*) Lexington counters that it has established the existence of an agreement to arbitrate and that plaintiff assented to the Agreement's terms. (Doc. No. 19 at 4.)

Attached to the defendant's pending motion to compel arbitration is the declaration of Gavin Shea, a Senior Manager of Database Marketing at Progrexion Marketing, Inc. ("Progrexion"), a firm that provides marketing and administrative services for Lexington. (Doc. No. 15-1 ("Shea Decl.") at ¶¶ 2, 3.) Shea declares that: (1) on February 22, 2018, plaintiff contacted Lexington via phone to engage its services; (2) on that same day, Lexington sent plaintiff the Agreement via text message; (3) on that same day, at approximately 7:56 p.m., plaintiff replied to that text message by typing the word "Agree"; and (4) Lexington thereafter inserted plaintiff's electronic signature into the Agreement at the time he electronically agreed to the Agreement. (*Id.* at ¶¶ 7–10.) Shea avers that "[t]he Agreement has not been altered since that time." (*Id.* at ¶ 10.)

Plaintiff contends that Shea's declaration is an "objectionable declaration" and inadmissible hearsay. (Doc. No. 18 at 11.) The court disagrees. Pursuant to Federal Rule of Evidence 803(6), business records are excepted from the rule against hearsay. *See* Fed. R. Evid. 803(6). "For the records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and

5

(2) the record must have been kept in the course of a regularly conducted business activity." *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990), *as amended on denial of reh'g* (Apr. 23, 1991). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *Id.*

Here, Shea declares that he "ha[s] direct access to and regularly utilize[s] clients' records that Progrexion and Lexington Law keep in the ordinary course of business, . . . includ[ing] records pertaining to Lexington Law's rendering of services to Martin Starace at issue in this litigation." (Shea Decl. at ¶ 4.) Moreover, Shea states that he "is authorized to make th[e] declaration on behalf of Lexington Law." (*Id.* at ¶ 5.) Shea also declares that he "ha[s] reviewed . . . the Engagement Agreement . . ., the support notes related to Plaintiff's account, and the database that captures the manner in which Lexington Law sends and receives documents and communications to and from its clients." (*Id.* at ¶ 7.) Further, Shea avers that Lexington generated the records that he has relied upon at or near the time of the incident recorded, that the records were generated by or from information transmitted by someone with knowledge of the act, and that the records were kept in the course of Lexington and Progrexion's regularly-conducted business activities. (*Id.* at ¶ 6.) The court is satisfied that Shea is a "qualified witness," that the records his declaration relies upon were made at the time of the incident recorded, and that the records were kept in the course of a regularly-conducted business activity. Thus, the court will consider the Shea declaration and the Agreement attached to it.

Next, plaintiff contends that "there was no mutual assent by [him] to be bound by the arbitration clause [because] Defendant never even presented the Agreement to [him]." (Doc. No. 18 at 11.) This argument is also unavailing. First, the Shea declaration establishes that plaintiff *was* provided the Agreement via text message on February 22, 2018. (Shea Decl. at ¶ 9.) Second, the Shea declaration establishes that plaintiff accepted the Agreement by replying

/////
/////
/////
/////

6

"Agree" via text message and that Lexington thereafter inserted his electronic signature into the Agreement at the time that he electronically agreed to the Agreement.[2] (*Id.* at ¶¶ 9, 10.)

Relying on the decision in *Nguyen v. Barnes and Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014), plaintiff next argues that Lexington was obligated to provide him with sufficient notice of the arbitration clause and that "[t]here is no evidence that Plaintiff had actual notice of the terms of the Agreement." (Doc. No. 18 at 11–12.) Plaintiff's reliance on *Nguyen* is misplaced. In *Nguyen*, the Ninth Circuit affirmed the district court's denial of Barnes & Noble's motion to compel arbitration after holding that Barnes & Noble's website did not place Nguyen on sufficient notice that, by using the website, he was agreeing to the company's terms and conditions. 763 F.3d at 1175–79. The Ninth Circuit in *Nguyen* court was therefore determining the validity of what is commonly referred to as a "browsewrap" agreement, which "does not require the user to manifest assent to the terms and conditions expressly[;] . . . [a] party instead gives his assent simply by using the website." *Id.* at 1176 (citation and internal quotation marks omitted). The court in that case held that a party seeking to enforce a browsewrap agreement must establish that the other party had actual or constructive knowledge of the agreement. *Id.* For the following reasons, the decision in *Nguyen* is not applicable to this case: (1) the Agreement at issue is not a browsewrap agreement; (2) plaintiff *was* provided the Agreement via text message; and (3) plaintiff assented to the terms of the Agreement by replying "Agree" to the text message. Thus, the concerns that were before the court in *Nguyen* are simply not present here. Indeed, as the Ninth Circuit in *Nguyen* acknowledged, "[w]ere there any evidence in the record that Nguyen had actual notice of the Terms of Use or was required to affirmatively

/////

---

[2] At the June 4, 2019 hearing on the pending motion, plaintiff's counsel stressed that the gravamen of plaintiff's opposition is that the proof proffered by Lexington to establish the existence of a valid agreement is insufficient. For the reasons discussed above, however, the court finds that argument to be unpersuasive. *See Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (Finding the defendant's burden to establish the existence of a valid agreement satisfied where (1) the defendant offered a detailed, unopposed declaration establishing that plaintiff did electronically sign the agreement, and (2) the plaintiff did not "challenge the authenticity of his signature or the prima facie validity of the arbitration agreement," nor did the plaintiff offer evidence to suggest that he did not sign the agreement).

7

acknowledge the Terms of Use before completing his online purchase, the outcome of this case might be different." *Id.*

Finally, relying on the decision in *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559 (9th Cir. 2014), plaintiff contends that "the arbitration clause was not clearly and effectively communicated to [him]." (Doc. No. 18 at 12.) Plaintiff's reliance on *Knutson* is also misplaced. That case concerned the validity of a Sirius XM consumer agreement that was sent to plaintiff one month after he purchased a vehicle from Toyota that was equipped with a Sirius XM radio. *Knutson*, 771 F.3d at 562. In reversing the district court's order granting Sirius XM's motion to compel arbitration based on the consumer agreement, the Ninth Circuit found that "[a] reasonable person in Knutson's position could not be expected to understand that purchasing a vehicle from Toyota would simultaneously bind him or her to any contract with Sirius XM." *Id.* at 566. Thus, the court found that Knutson "did not know that he was entering into a contractual relationship with Sirius XM by using the service." *Id.* In contrast, here, plaintiff knew he was entering into a contractual relationship with Lexington because he contacted Lexington to secure their services, Lexington provided him with the Agreement and he agreed to its terms prior to Lexington commencing to render services on his behalf. That plaintiff might not have read the arbitration clause at issue is of no import. *See id.* at 565 ("[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.") (citation and internal quotation marks omitted).

Having found none of plaintiff's arguments to be persuasive, the court concludes that, based on the record before it, plaintiff assented to the Agreement.

**B.     Whether the Agreement is Unconscionable**

Next, the court analyzes whether the Agreement is valid and enforceable under 9 U.S.C. § 2. Plaintiff attempts to defeat the pending motion by arguing that the Agreement and/or the arbitration clause are procedurally and substantively unconscionable. (Doc. No. 18 at 12–15.) Specifically, plaintiff contends that: (1) the Agreement is a "contract of adhesion" and therefore unconscionable; and (2) the language "[y]ou agree to arbitrate *all disputes and claims* between you and Lexington" is "so broad as to be unconscionable." (*Id.* at 12–13) (emphasis added).

8

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision, known as the "savings clause" of the FAA, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs.*, 517 U.S. at 687). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).

To establish the defense of unconscionability under California law, the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable. *Id.* at 1260 (citing *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). "The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability . . . [b]ut they need not be present in the same degree." *Sanchez*, 61 Cal. 4th at 910. Courts generally view procedural and substantive unconscionability on a sliding scale, whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

1. Whether the Agreement is Procedurally Unconscionable

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)); *see also Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) ("Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."). "Oppression addresses the weaker party's absence of choice and unequal bargaining power that

results in no real negotiation," while "[s]urprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (internal quotation marks and citation omitted). "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. "The term contract of adhesion signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.*

Plaintiff argues that the Agreement is procedurally unconscionable because it is a contract of adhesion. (Doc. No. 18 at 13.) Lexington does not dispute that it presented plaintiff with a standardized contract that was drafted by its agents. The court also concludes that Lexington was the party of superior bargaining strength. However, it does not follow from these facts that the Agreement is procedurally unconscionable to such an extent to be unenforceable. *See, e.g.*, *United States v. Singulex, Inc.*, No. 4:16-cv-05241-KAW, 2019 WL 1981192, at *3 (N.D. Cal. May 3, 2019) ("To the extent that this was a contract of adhesion, the undersigned sufficiently addressed that issue, and found that, in the absence of duress caused by Singulex, there is minimal procedural unconscionability."); *Gutierrez v. FriendFinder Networks Inc.*, No. 18-CV-05918-BLF, 2019 WL 1974900, at *10 (N.D. Cal. May 3, 2019) ("[T]he Ninth Circuit has made clear that 'the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most.'") (quoting *Poublon*, 846 F.3d at 1261–62). Here, with respect to procedural unconscionability, plaintiff does not allege anything more than the fact that the Agreement was a contract of adhesion.[3] Moreover, the court finds that, while the adhesive nature of the Agreement suggests that it is oppressive, the Agreement itself clearly disclosed its terms, including the arbitration clause. Accordingly, the court finds that the adhesive nature of the Agreement "demonstrates only a slight degree of procedural unconscionability." *Id.*

---

[3] Plaintiff does argue that Lexington's "actions were procedurally unconscionable because they did not provide the Agreements nor explain the arbitration clause contained in the Agreements prior to obtaining Plaintiff's electronic signatures." (Doc. No. 18 at 13.) However, as addressed above, the evidence before the court establishes that Plaintiff *was* provided a copy of the Agreement. He has not meaningfully disputed that evidence. Moreover, the arbitration provision of the Agreement is conspicuous and it was plaintiff's obligation to read it before agreeing to it.

### 2. Whether the Agreement is Substantively Unconscionable

Having found that the Agreement is only minimally procedurally unconscionable, the court must next find that the Agreement is substantively unconscionable to a much greater degree in order to conclude that it as a whole is unconscionable. *Armendariz*, 24 Cal. 4th at 114. Plaintiff argues that the Agreement is substantively unconscionable because the arbitration clause "is so incredibly broad as to cover any dispute." (Doc. No. 18 at 14.)

"The substantive element of unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 247 (2016) (internal quotation marks omitted). California courts have applied various tests to determine whether an agreement is substantively unconscionable. These include inquiring whether the terms are "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience." *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (collecting cases). The California Supreme Court recently clarified, however, that "these formulations, used throughout our case law, all mean the same thing." *Sanchez*, 61 Cal. 4th at 911. At bottom, an agreement is substantively unconscionable where its enforcement would work "a substantial degree of unfairness beyond a simple old-fashioned bad bargain." *Id.*; *see also Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 703 (2013) (noting that substantive unconscionability may exist where "contractual provisions reallocate risks in an objectively unreasonable or unexpected manner"). "Mutuality is the 'paramount' consideration when assessing substantive unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2012) (quoting *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (2004)).

In support of his argument that the arbitration clause at issue here is substantively unconscionable, plaintiff directs the court's attention to the decision in *In re Jiffy Lube International, Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012). There, the plaintiffs sought to assert a class action claim under the Telephone Consumer Protection Act ("TCPA") against a Jiffy Lube franchisee after they received unauthorized text messages offering a discount on Jiffy Lube's oil-change services. *Id.* at 1255. One plaintiff had previously signed

an agreement containing an arbitration clause when he visited the franchisee for an oil change that provided that "any and all disputes, controversies or claims" between the parties was to be resolved by mandatory arbitration. *Id.* at 1262. The court found this language to be "incredibly broad" and that, without a limiting clause, the language could lead to "absurd results." *Id.* at 1262–63 (quoting *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003)). For example, the court noted that "a suit by [plaintiffs] regarding a tort action arising from a completely separate incident could not be forced into arbitration—such a clause would clearly be unconscionable." *Id.* at 1262–63. The court declined to read into the arbitration clause limiting language such as "any and all disputes, controversies or claims *arising out of or relating to the agreement*" because the court: (1) was unclear as to whether it had the authority to do so; and (2) was "doubtful whether that [limiting] language would encompass [the TCPA claims]" because "the fact that the [unauthorized] text message offered membership in a club that would provide discounts on an oil change does not establish that the text message was related to the contract governing [plaintiff's] oil change." *Id.* at 1263.

Relying on *In re Jiffy Lube*, plaintiff argues that the arbitration clause at issue here is impermissibly broad and therefore unconscionable. For a number of reasons, however, the court is unpersuaded by plaintiff's argument. First, of course, the decision in *In re Jiffy Lube* is not binding on this court. Second, that decision did not apply California law and cited no binding authority that supported its analysis and instead relied on a Seventh Circuit opinion in finding the arbitration provision before it was overly broad. *See* 847 F. Supp. 2d at 1262–63. Third and most importantly, *In re Jiffy Lube* is inapposite because unlike in that case there is no doubt here that plaintiff's claims against Lexington *are* related to the Agreement. Indeed, plaintiff does not dispute this point. The only claim in the complaint alleges that Lexington violated EFTA by not obtaining written or electronic authorization from plaintiff for preauthorized electronic fund transfers from his account. (Doc. No. 1 at 9–10); *see also Homestake Lead Co. of Mo. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) ("The threshold for arbitrability is not high. To trigger an arbitration requirement, the movant's factual allegations need only 'touch matters' covered by the contract containing the arbitration clause.") (internal citation omitted)

(citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n.13 (1985)). Fourth and finally, multiple courts have found arbitration clauses containing similarly broad language to be enforceable. *See, e.g.*, *Concepcion*, 563 U.S. at 336 (upholding an arbitration clause that required arbitration of "all disputes between the parties"); *Augustine v. TLC Resorts Vacation Club, LLC*, No. 3:18-cv-01120-H-JMA, 2018 WL 3913923, at *5 (S.D. Cal. Aug. 16, 2018) (enforcing an arbitration clause that required arbitration of "all disputes and claims . . . that can't otherwise be resolved through customer service").

The court therefore declines to find that the broad scope of the arbitration clause at issue in this case renders it substantively unconscionable. Instead, the court will analyze whether the actual terms of the arbitration clause are overly harsh, unduly oppressive, or one-sided. Here, a review of arbitration clause reveals that its scope applies equally to any claims that Lexington may wish to bring against plaintiff; thus, the scope cannot be deemed overly harsh, unduly oppressive or, unreasonably one-sided so as to shock the conscience. *See Sonic-Calabasas A, Inc.*, 57 Cal. 4th at 1145. While the arbitration clause prevents plaintiff from asserting his claims on a class-wide basis, the court concludes that there is no "substantial degree of unfairness in that beyond a simple old-fashioned bad bargain." *Sanchez*, 61 Cal. 4th at 911. In sum, the court finds no basis to void the Agreement on the basis of unconscionability.

**C.     Whether Dismissal of this Action is Appropriate**

Having determined that a valid arbitration agreement exists between the parties and that plaintiff's EFTA claim is within the scope of the arbitration agreement, "the Court must dismiss the action or compel the action to arbitration and stay the proceedings." *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1089 (E.D. Cal. 2014); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (where all claims were subject to an arbitration clause found to be valid "the plaintiffs could not possibly win relief and the dismissal was appropriate"). The court "'has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration.'" *Ortiz*, 52 F. Supp. 3d at 1089 (quoting *Delgadillo v. James McKaone Enters., Inc.,* No. 1:12-cv-1149, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012.)); *see also Farrow v. Fujitsu America, Inc.*, 37 F. Supp. 3d 1115, 1126 (N.D.

13

Cal. 2014) ("When arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely.") Here, the court concludes that dismissal of this action is appropriate because plaintiff's sole claim is subject to the Agreement's enforceable arbitration clause.

**CONCLUSION**

Having found that plaintiff assented to the Agreement and having further found that the Agreement is valid and enforceable, the court hereby grants defendant's motion to compel arbitration (Doc. No. 13) based on the arbitration clause in the Agreement and dismiss this action. Accordingly, the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **June 27, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE